Laurie Dahl Rea
State Bar No. 00796150
Dylan T.F. Ross
State Bar No. 24104435
FORSHEY & PROSTOK LLP
777 Main St., Suite 1550
Fort Worth, TX 76102
Telephone: 817-877-8855
Facsimile: 817-877-4151
lrea@forsheyprostok.com
dross@forsheyprostok.com

ATTORNEYS FOR KOR REALTY, INC.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Korwall Industries, Inc., | ) | Case No. 22-41574-elm7 |
| | ) | |
| | ) | |
| Debtor. | ) | **Expedited Hearing Requested** |
| | ) | |

**LANDLORD'S UNOPPOSED MOTION TO DEEM NON-RESIDENTIAL REAL PROPERTY
LEASE TERMINATED OR REJECTED AS OF JULY 15, 2022**

TO THE HONORABLE EDWARD L. MORRIS, UNITED STATES BANKRUPTCY JUDGE:

Kor Realty, Inc. (the "Landlord"), a creditor and party-in-interest in the above-captioned

Chapter 7 case (the "Bankruptcy Case"), files this *Unopposed Motion to Deem Non-Residential*

*Real Property Lease Rejected as of July 15, 2022* (the "Motion").[1] In support of this Motion, the

Landlord respectfully states as follows:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this

Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The bases for the relief sought herein are sections

365 of the Bankruptcy Code and FED R. BANKR. P. 6006 and 9014.

---

[1] Contemporaneously herewith, the Landlord is filing its *Unopposed Motion to Compel Abandonment of Fixtures and Personal Property at Leased Premises* in this Bankruptcy Case.

## BACKGROUND

2.      On July 15, 2022 (the "Petition Date"), Korwall Industries, Inc. ("Korwall" or the "Debtor") filed a voluntary petition for relief under Chapter 7 of title 11 of the United State Code (the "Bankruptcy Code"). Mr. Behrooz Vida (the "Trustee") was appointed as the Chapter 7 Trustee for this Bankruptcy Case.

3.      Prior to the Petition Date, on or about October 1, 2019, Korwall executed a *Commercial Lease* (the "Lease") with the Landlord for non-residential real property located at 328 North Bowen Road, Arlington, Texas 76012 (the "Warehouse") and 326 North Bowen Road, Arlington, Texas 76012 (the "Office" and collectively with the Warehouse, the "Premises") for a term of one (1) year ending September 30, 2020. The Lease was renewed every year and most recently renewed by the Debtor on or about October 1, 2021. A true and correct copy of the Lease is attached hereto as **Exhibit A**.

4.      Upon information and belief, the Debtor closed its business on or about April 21, 2022. The Debtor did not pay its rent for May 2022.[2]

5.      On May 20, 2022, the Landlord filed eviction proceedings in the Justice Court Precinct Two, Tarrant County, Texas (the "Justice Court") against the Debtor to evict the Debtor from the Premises and thereby commencing case number JP02-22-E00135343 (the "Warehouse Eviction Proceeding") and case number JP02-22-E00135344 (the "Office Eviction Proceeding" and collectively with the Warehouse Eviction Proceeding, the "Eviction Proceedings").

6.      On June 8, 2022, the Justice Court entered its judgment against the Debtor in the Warehouse Eviction Proceeding (the "Warehouse Eviction Judgment"). A true and correct copy of the Warehouse Eviction Judgment is hereto as **Exhibit B**. On the same day, the Justice Court

---

[2] The Debtor has not paid rent since May 2022 and the Landlord is currently owed $26,500 in unpaid rents (the "Claim"). The Debtor scheduled a claim owed to the Landlord in its schedules in the amount of $12,879.88. *See* Schedule E/F, § 3.21 [Dkt. No. 1; 07/15/22]. The Landlord has not yet filed a proof of Claim for any debts owed or an application for any administrative expenses incurred post-petition, but the Landlord reserves the right to do so in a future pleading pursuant to the Bankruptcy Rules and Bankruptcy Code.

also entered its judgment against the Debtor in the Office Eviction Proceeding (the "Office Eviction Judgment" and collectively with the Warehouse Eviction Judgment, the "Eviction Judgments"). A true and correct copy of the Office Eviction Judgment is hereto as **Exhibit C**. The Eviction Judgments ordered that a writ of possession be issued to seize possession of the Premises.

7.      On June 17, 2022, the Justice Court issued a writ of possession for the Office (the "Office Writ"). A true and correct copy of the Office Writ is attached hereto as **Exhibit D**.

8.      On June 27, 2022, Constable Robert J. McGinty executed the Office Writ on the Debtor. The Constable's Return is attached hereto as **Exhibit E**. Upon execution, the Debtor's personal property at the Office was set outside in the parking lot for a 24-hour period pursuant to the Office Writ.[3] At the conclusion of the 24-hour period, the remaining items were disposed of by the Landlord.  The Office previously occupied by the Debtor is empty and vacant.

9.      On July 13, 2022, the Justice Court issued a writ of possession for the Warehouse (the "Warehouse Writ" and collectively with the Office Writ, the "Writs"). A true and correct copy of the Warehouse Writ is attached hereto as **Exhibit F**.

10.      On July 16, 2022, Constable Robert J. McGinty executed the Warehouse Writ on the Debtor. The Constable's Return is attached hereto as **Exhibit G**. Upon execution, the door to the Warehouse was left open for a 24-hour period thereby allowing the Debtor to retrieve any of its personal property pursuant to the Warehouse Writ. At the conclusion of the 24-hour period, the door to the warehouse was closed and locked. The Warehouse previously occupied by the Debtor contains several fixtures and the Debtor's remaining personal property, including a circular saw, broom, extension cords, detergent to clean the glue spreader, building construction textbooks, and product inventory.[4]

11.      Based on these facts, the Landlord contends that the Lease was terminated pre-petition pursuant to the Eviction Judgments and issuance of the Writs. However, to the extent the

---

[3] The Office Writ notes that the personal property consisted of a small number of files and office furniture.
[4] Most of the personal property remaining at the Warehouse is junk and trash and needs to be thrown away.

Lease was not terminated pre-petition, the Trustee has not yet abandoned the Lease, administrative expense claims for the Lease against the Debtor are continuing to accrue, and the Landlord seeks to relet the space as soon as possible. Pursuant to the Debtor's Schedule G, the Debtor intends to reject the Lease and states that zero (0) months are remaining under the term.[5]

12.     Accordingly, the Landlord is filing this Motion seeking an order deeming the Lease terminated pre-petition or, in the alternative, rejected as of the Petition Date.

## RELIEF REQUESTED AND BASIS THEREFOR

13.     Under 11 U.S.C. § 365(a), a debtor may assume or reject an executory contract subject to the Bankruptcy Court's approval. Section 365(d)(4) provides for the trustee or debtor-in-possession to assume or reject non-residential real property leases within **210** days of the filing of the petition.[6] Accordingly, the Lease would not be deemed rejected pursuant to the Bankruptcy Code until February 10, 2023.

14.     However, on the request of a party-in-interest, the Bankruptcy Court may order a debtor or trustee to determine within a specified period of time whether to assume or reject the contract at issue. Bankruptcy Rule 6006(a). Bankruptcy courts will generally approve assumption or rejection of a contract or lease if presented with evidence that either course of action is a good business decision. *See Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1658 (2019) ("The bankruptcy court will generally approve [the] choice [to assume or reject], under the deferential 'business judgment' rule.").

15.     In this instance, the Lease should be deemed terminated prior to the Petition Date and the Landlord should be authorized to relet the Premises to a new tenant. The Debtor has vacated the Premises and intends to reject the Lease. There is no reason to delay such rejection

---

[5] Schedule G, § 2.1 [Dkt. No. 1; 07/15/22].
[6] The Consolidated Appropriations Act of 2021 was signed into law on December 27, 2020 and modified section 365(d)(4). The change extended the number of days for a trustee or debtor-in-possession to assume or reject a non-residential real property lease from 120 to 210 days. This extension sunsets two years after December 27, 2020.

as any additional delay will unnecessarily require the Landlord to wait an undetermined amount of time until the Trustee rejects the Lease.

16.     Based on the facts outlined above, the Landlord contends that the Lease was terminated pre-petition. However, out of an abundance of caution and for the avoidance of any doubt, the Landlord is seeking an order recognizing the pre-petition termination or, in the alternative, compelling the rejection of the Lease by the Trustee as of the Petition Date.

17.     Accordingly, the Landlord requests an order deeming the Lease terminated as of the Petition Date, or, in the alternative, pursuant to section 365 of the Bankruptcy Code and FED. R. BANKR. P. and Bankruptcy Rule 6006, the Landlord hereby requests entry of an order deeming the Lease rejected as of the Petition Date and requiring the Trustee to immediately surrender the Premises to the Landlord.

## **PRAYER**

WHEREFORE, the Landlord respectfully requests that the Court enter an order granting the relief requested herein, substantially in the form as the proposed order attached hereto as **Exhibit H**, and providing the Landlord any other such relief as the Court may deem just and proper.

Dated: September 28, 2022                     Respectfully submitted,

                                              /s/ Dylan T.F. Ross
                                              Laurie Dahl Rea
                                              State Bar No. 00796150
                                              Dylan T.F. Ross
                                              State Bar No. 24104435
                                              Forshey & Prostok LLP
                                              777 Main St., Suite 1550
                                              Ft. Worth, TX  76102
                                              Telephone: (817) 877-8855
                                              Facsimile: (817) 877-4151
                                              lrea@forsheyprostok.com
                                              dross@forsheyprostok.com

                                              ATTORNEYS FOR KOR REALTY, INC.

                              .

## CERTIFICATE OF CONFERENCE

I hereby certify that on September 26 and 28, 2022, I discussed the merits of this Motion with Kenneth Hill, counsel for the Trustee. The Trustee does not oppose the relief sought by this Motion. On September 23, 2022, I emailed Donna Webb, counsel for the SBA a copy of this Motion for review and approval. Although I was unable to discuss this Motion with Ms. Webb, the Landlord presumes that the SBA does not oppose the relief sought herein.

/s/ Dylan T.F. Ross
Dylan T.F. Ross

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served via the Court's CM/ECF system on September 28, 2022, or otherwise by first class mail, postage prepaid, upon counsel for the Debtor; the United States Trustee; the Chapter 7 Trustee; counsel for the Chapter 7 Trustee;  and all parties who have filed a notice of appearance or request for notice in the case of such service, on September 28, 2022.

Donna K. Webb
Assistant United States Attorney
1100 Commerce St., Ste. 300
Dallas, Texas 75242
Donna.Webb@usdoj.gov

/s/ Dylan T.F. Ross
Dylan T.F. Ross

L:\LRea\Kor Realty Inc. (Korwall Industries, Inc) #6351\Pleadings\Motion to Deem Lease Rejected (Final) 9.28.22.docx

**<u>EXHIBIT A</u>**

# COMMERCIAL LEASE

THIS LEASE, is entered into as of the <u>1st day of October, 2019</u> by Kor Realty, Inc. ("*Landlord*"), and Korwall Industries Inc. ("*Tenant*").

**Section 1.** *Lease and Premises.* Landlord, in consideration of the rents and agreements herein to be performed by Tenant leases and rents to Tenant, and Tenant hereby leases and rents from Landlord, the following property together with all improvements thereto (the "*Premises*"):

- A warehouse building located at 328 North Bowen Rd Arlington Texas 76012. Included in the leased space is the parking area east of the building to Bowen Road and west of the building to Dixon Lane. The area to the north of the building is fenced at the property line and must remain accessible for service and drainage. Directly south of the building is a driveway that must remain open and accessible for traffic and trucks.

- Room #8 (approx. 200 sq ft) located in office building at 326 N. Bowen Rd. Arlington Texas 76012

- Room #7 (approx. 100 sq ft) located in office building at 326 N. Bowen Rd. Arlington Texas 76012

- Secretary area (approx. 100 sq ft) that directly adjoining offices 7 and 8, located inside office building at 326 N. Bowen Rd. Arlington Texas 76012.

- Room #4 (approx. 100 sq ft) located in office building at 326 N. Bowen Rd. Arlington Texas 76012

This lease will supersede all prior lease(s) signed by tenant. Tenant hereby accepts the Premises in their current "AS IS" "WHERE IS" condition, WITH ALL FAULTS.

**Section 2.** *Term; Use.* This lease is for a term of ONE year, commencing <u>October 1, 2019</u>, and terminating on <u>September 30, 2020</u>, or sooner as provided herein and paying Five thousand three hundred sixty three Dollars ($5,363) per month. Tenant shall use the Premises solely for <u>manufacturing structural insulated panels and related building products and offices</u> and for no other purpose without Landlord's prior consent, which consent may be withheld in Landlord's sole discretion.

**Section 3.** *Rent.* Tenant shall pay Landlord at Landlord's designated location, without notice or demand and without set-off or deduction, rent of <u>$5,363 per month,</u> payable in advance on the first day of each calendar month during the term of this lease. Tenant's obligation to pay rent under this Lease is an independent, unconditional covenant of Tenant. All other payments to be paid by Tenant to third parties as provided for under this Lease shall constitute rent payable hereunder. If Landlord does not actually receive a rent payment in the full amount at the designated place of payment on the 3rd day after the date on which the payment is due, Tenant shall pay to Landlord a late charge of $125 for each late payment. The parties agree that the late charge is a reasonable estimate of the damages sustained by Landlord resulting from such late payment which are incapable of precise calculation. In addition to the foregoing, Tenant will pay Landlord $75 for each check or money order from Tenant which is returned or not honored by the financial institution on which it is drawn for any reason. Landlord's acceptance of late charges or returned check charges does not waive Landlord's right to exercise any remedies under Section 15.2 of this Lease.

**Section 4.** *Security Deposit.* Tenant has deposited with Landlord under previous leases a total of $0, as security for the faithful performance and observance by Tenant of the terms and conditions of this Lease (the "*Security Deposit*"). Landlord may commingle the Security Deposit with its other funds and shall receive and hold the Security Deposit without liability for interest. Landlord may, at Landlord's option (without prejudice to any other remedy) use, apply, or retain the whole or any part of the Security Deposit to the extent required for the payment of any rent or any other sum as to which Tenant is in default or for any sum which Landlord may expend or may be required to expend by reason of Tenant's default in respect of any of the terms and conditions of this Lease. In the event all or any part of the Security Deposit is applied toward payment of an obligation or liability of Tenant under this Lease, Tenant shall, within ten (10) days after request therefor by Landlord, again pay Landlord as a Security Deposit an amount equal to any amount so applied, so that the Security Deposit shall equal its original amount. In the event that Tenant shall fully and faithfully comply with all of the terms, provisions, agreements, covenants and conditions of this Lease, the Security Deposit shall be returned to Tenant within thirty (30) days after the termination or expiration

Initialed: Landlord *KK*    Tenant *SRD*

of this Lease (provided such termination is not the result of a default by Tenant) and after delivery of possession of the Premises to Landlord (in a condition satisfactory to Landlord) and payment of all sums due to Landlord.

**Section 5**. *Maintenance and Repairs*. Tenant acknowledges and represents that Tenant understands that the amount of rent due under this Lease is based upon the allocation of risks and Tenant's agreement to repair and maintain the Premises set forth in this Lease and that Tenant understands that a change in the allocation of risks or the respective duties of Tenant or Landlord under this Lease would affect the amount of rent set forth herein. Tenant agrees, at Tenant's sole cost and expense, to promptly maintain, repair, renovate and take such action as necessary to make the premises (inside and outside) suited for the use permitted by this Lease and throughout the term hereof, at Tenant's sole cost and expense, Tenant shall maintain the Premises and improvements in good condition and repair and operate and maintain the same in accordance with all applicable laws, rules, ordinances, orders and regulations of federal, state, county, municipal, and other governmental agencies and bodies having or claiming jurisdiction over the Premises *provided* that repairs to the plumbing, heating, cooling and electrical systems for the Premises (collectively, the *"Mechanical Systems"*) must be approved in advance in writing by Landlord. The term "Mechanical Systems" shall include only systems incorporated into the Premises and owned by Landlord and shall not include any such system incorporated into any improvements or other property owned by Tenant. Tenant will pay all expenses for ordinary maintenance as required to maintain the Mechanical Systems in good operating condition. Landlord's sole duty as to the maintenance of the Premises is upon written request from Tenant to repair any material structural defect in the Premises (except for any improvements constructed by Tenant), unless such material defect is caused, directly or indirectly, by the act or omission of Tenant. Tenant will mow and maintain all areas within the property including mowing grass areas, removing or spraying grass/weeds, along all fence lines, along drainage culverts beside roads, all vegetation areas, spraying or removing weeds and grass in concrete and/or asphalt areas, parking lots or around buildings. All improvements constructed on the Premises by Tenant as permitted by this Lease shall be owned by Tenant until expiration of the term or sooner termination of this Lease. Tenant shall not, however, remove any improvements from the Premises nor waste, destroy or (except as set forth herein above) modify any improvements. The parties covenant for themselves and all persons claiming by, through under them that the improvements are real property. All additions to the existing improvements shall, at the expiration of the term or sooner termination of this Lease and without compensation to Tenant, become Landlord's property free and clear of all claims to or against them by Tenant or anyone claiming by, through or under Tenant, **and Tenant shall defend and indemnify Landlord against all liability and loss arising from such claims or from Landlord's exercise of the rights conferred by this paragraph.** No alterations to the Premises shall be made to the Premises without the express prior written consent of Landlord. Tenant has accepted the Premises in their "AS IS" condition on the date of this Lease and is, except as expressly provided herein, accepting the Premises without representation or warranty, express or implied in fact or by law and without recourse to the Landlord as to the nature, condition or usability thereof or the use or uses for which the Premises or any portion thereof may be put. The signing of this lease is conclusive evidence of the satisfactory condition of the Premises and no subsequent discovery of latent or patent defects shall constitute grounds for abatement of rent or any other remedy by or for the benefit of Tenant.

**Section 6**. *Taxes and Assessments*. Landlord agrees to pay, before they become delinquent, all taxes, assessments, and governmental charges, whether federal, state, county or municipal, assessed against or attributable to the Premises or its operation ("*Taxes*"). If the Taxes for any real estate tax year during the term of this Lease exceed the Taxes for the prior calendar year (the "Base Tax Year"), then Tenant agrees to pay to Landlord as additional rental the amount by which the Taxes for that year exceeds the Taxes for the Base Tax Year. If Tenant fails to pay Tenant's share of such increase to Landlord within thirty (30) days after receipt of Landlord's written statement setting forth Tenant's share of such increase, then the unpaid amount shall bear interest from the date due until paid at the Past Due Rate (defined below).

Initialed: Landlord *KK*   Tenant *SRD*

**Section 7**. *Insurance*. Tenant shall be responsible for insuring Tenant's property located on or about the Premises, and for insuring the improvements constituting a portion thereof. Landlord shall have no obligation to insure such property and improvements. Throughout the term of this Lease, Tenant shall maintain all such policies of insurance as Landlord may reasonably require, including without limitation, comprehensive general liability insurance.

A.   Tenant is required to provide and maintain Landlord with a Certificate of Insurance showing "Korleski Partners, LTD and Kor Realty, Inc." as additional insured on Tenants General Liability policy (with form CG2011 or equivalent) with the minimum limits of $1,000,000 per occurrence and $2,000,000 general aggregate.

All policies of insurance are required to be maintained by Tenant shall specifically provide that Landlord shall be given at least thirty (30) days prior written notice of any cancellation or nonrenewal of any such policy. A duplicate original of each such policy shall be deposited with Landlord by Tenant on or before the commencement date of this Lease, and a duplicate original of each subsequent policy shall be deposited with Landlord at least thirty (30) days prior to the expiration of the preceding such policy. It is recognized that the Tenants operations and the tenant's use of the property may influence the perceived risk of insurance and possibly cause the Landlords Insurance company to increase the insurance cost to the Landlord. If Tenant's operations or use of the property is the cause, or results in increased insurance cost to the Landlord, then the Tenant shall pay 100% of the increased insurance, payable to the Landlord when requested for each year the insurance is higher than the base 2018 insurance year.

**Section 8.** *Utilities*. Tenant shall pay utility bills and other expenses incurred in connection with the use and occupancy of the Premises, including water, gas, electricity, and waste disposal. In the event that Landlord provides any utility service to the Premises, the Tenant will promptly pay to the Landlord, as additional rent, the Tenant's share of Landlord's estimated cost for such utilities. All utilities not provided by the Landlord are the sole responsibility of the Tenant.

**Section 9.** *Liability, Indemnity, and Waiver of Subrogation*. Tenant agrees to indemnify and hold harmless Landlord from and against any and all claims, suits, actions, losses, costs, liabilities, and damages (including, but not limited to, attorney's fees) for injury to persons, including death, or for damage to property resulting from Tenant's occupancy of the Premises or from any act or omission of Tenant or Tenant's agents, servants, employees, contractors, customers, or invitees. In the event of loss or damage to the Premises or any contents thereof, the Tenant shall look solely to any insurance carried by Tenant covering such loss. Tenant hereby waives any right Tenant, or any party claiming through or under Tenant, by subrogation or otherwise, may have against Landlord to recover for any insurable loss. To the extent permitted under applicable law, Tenant shall obtain, for each policy of such insurance, an endorsement waiving the insurer's rights against the Landlord for any such loss or damage.

**Section 10.** *Fire and Other Casualty Damage*. In the event the improvements on the Premises are damaged or destroyed, partially or totally, from any cause whatsoever, whether or not such damage or destruction is covered by any insurance required to be maintained under this Lease, the Tenant shall repair, restore and rebuild the Premises to their condition existing immediately prior to such damage or destruction and this Lease shall continue in full force and effect. Such repair, restoration and rebuilding (all of which are herein called the "repair") shall be commenced within a reasonable time after such damage or destruction and shall be diligently prosecuted to completion. There shall be no abatement of rent or of any other obligation of Tenant hereunder by reason of such damage or destruction. The proceeds of any insurance maintained under this Lease shall be made available to Tenant for payment of the cost and expense of the repair, provided, however, that such proceeds may be made available to Tenant subject to reasonable conditions including, but not limited to, architect's certification of costs and retention of a percentage of such proceeds pending final notice of completion. If the Premises are partially destroyed during the last six (6) months of the term of this Lease, Landlord may, at Landlord's option, cancel and terminate this Lease as of the date of occurrence of such damage by giving written notice to Tenant of Landlord's election to do so within thirty (30) days after the date of occurrence of such damage and in such event, pro rata adjustment of rent based upon a thirty (30) day month shall be made.

**Section 11.** *Legal Use; Environmental Compliance*. Tenant shall not use, occupy, or permit to be used or occupied the Premises for any purpose that is illegal, that is dangerous to life, limb, or property, that would make void or voidable any insurance relating to the Premises, or that would constitute a nuisance. Without limiting the foregoing, Tenant covenants and agrees to comply strictly and in all respects with the requirements of any applicable law,

Commercial Lease – Page 3                              Initialed: Landlord *KK*   Tenant *SRD*

statute, ordinance, permit, decree, guideline, rule, regulation or order pertaining to health or the environment (hereinafter sometimes collectively called *"Applicable Environmental Laws"*), including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, the Resource Conservation and Recovery Act, the Texas Water Code and the Texas Solid Waste Disposal Act, as each of the foregoing may be amended from time to time. Tenant shall not cause or permit any Hazardous Materials (as hereinafter defined) to be generated, treated, stored, used, installed or disposed in, on, under or about the Premises. Tenant shall not install or place (or permit to be installed or placed upon the Premises) any Underground Storage Tank (defined below) or any aboveground storage tank utilized in storing petroleum products or substances, hazardous substances or Hazardous Materials. Tenant represents, warrants, covenants and agrees that Tenant is not and will not become involved in operations at the Premises or at other locations which could lead to the imposition on Landlord of liability under any of the Applicable Environmental Laws. Tenant does hereby, for itself and its heirs, legal, representatives, successors, assigns and grantees, agree to and hereby does indemnify, defend and hold harmless Landlord, and its heirs, legal representatives, assigns, successors and grantees, of and from any and all liabilities, assessments, suits, damages, costs and expenses, attorney's fees and judgments related to or arising out of (a) the breach of any of the agreements of Tenant under this *Section 11*, (b) the handling, installation, storage, use, generation, treatment or disposal of Hazardous Materials, including any cleanup, remedial, removal, or restoration work required by the Applicable Environmental Laws or (c) the assertion of any lien or claim imposed against the Premises or any portion thereof or Landlord pursuant to the Applicable Environmental Laws. The covenants and agreements of Tenant under this *Section 11* shall survive the expiration or termination of this Lease. As used in this Lease, the term *"Hazardous Materials"* means any flammables, explosives, radioactive materials, asbestos-containing materials, petroleum products, the group of organic compounds known as polychlorinated byphenyls and other hazardous waste, toxic substances or related materials, including without limitation substances defined as "hazardous substances", "hazardous materials", "toxic substances" or "solid waste" in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, the Hazardous Materials Transportation Act, the Resources Conservation and Recovery Act ("*RCRA*") and the Texas Solid Waste Disposal Act, as each of the foregoing may be amended from time to time. "Underground Storage Tank" shall have the meaning specified in RCRA.

**Section 12.** *Liens.* Tenant shall not place, or permit to be placed as a result of any action taken by Tenant, any lien or security interest of any nature whatsoever on the Premises, or any part thereof or right thereto, including Tenant's leasehold estate therein and any alterations and improvements to the Premises, and shall cause any such liens which are placed on the Premises to be immediately released or discharged. Tenant hereby grants to Landlord a lien and security interest on and in all property of Tenant now or hereafter placed in or upon the Premises, including without limitation all goods, wares, fixtures, Trade Fixtures, machinery, inventory, equipment, furniture, furnishings and other personal property now or hereafter placed in or upon the Premises (collectively, the *"Personal Property"*), and such Personal Property shall be and remain subject to such lien and security interest of Landlord for payment of all rent and other sums agreed to be paid by Tenant under this Lease. Said lien and security interest shall be in addition to and cumulative of the Landlord's liens provided by law. This Lease shall constitute a security agreement under the Uniform Commercial Code as enacted and enforced in the State of Texas (the "*UCC*") so that Landlord shall have and may enforce a security interest on all such Personal Property. Such Personal Property shall not be removed from the Premises unless such removal is in the ordinary course of Tenant's business and Tenant is not at the time of such removal in default under this Lease. Tenant agrees to execute as debtor such financing statement or statements as Landlord may now or hereafter reasonably request in order that such security interest or interests may be protected pursuant to said UCC. Landlord may at its election at any time file a copy of this Lease as a financing statement. Landlord, as secured party, shall be entitled to all of the rights and remedies afforded a secured party under said UCC, which rights and remedies shall be in addition to and cumulative of Landlord's liens and rights provided by law or by the other terms and provisions of this Lease.

**Section 13**. *Tenant's Furniture, Fixtures, Personality and Clean-Up.* Prior to the termination of this Lease, Tenant shall remove all furniture, trade fixtures, and personal property from the Premises, and shall repair any damage caused by such removal and shall thoroughly clean the Premises and remove all trash, debris, dirt and other materials and substances in, on or about the Premises arising out of or related to Tenant's use of the Premises.

**Section 14.** *Assignment and Sublease.* Without the prior written consent of Landlord, which consent may be withheld in Landlord's sole discretion, Tenant shall not have the right to assign all or any part of Tenant's rights under this Lease or to sublet any part of the Premises. Any transfer by Tenant of a majority of the ownership interest

Commercial Lease – Page 4                                    Initialed: Landlord _KK_   Tenant _SRD_

of Tenant, or any lesser percentage which results in a change in the effective control of Tenant, without Landlord's consent shall constitute a breach of this *Section 14*. Consent by Landlord to any such assignment or sublease shall not relieve Tenant of its liabilities and obligations under the Lease.

**Section 15.1.** *Default by Tenant.* The occurrence of any one or more of the following events shall constitute a default by Tenant under this Lease:

(a) Tenant shall fail to perform, observe or comply with any of the terms, provisions, agreements, covenants or conditions of this Lease or any guaranty now or hereafter executed relating to this Lease (other than the failure specified in *Section 15.1(b)* hereof), such failure continuing for ten (10) days after written notice from Landlord to Tenant of such failure; *provided, however,* that Landlord shall not be required to provide such notice (1) with respect to any default which is by its nature incurable, or (2) with respect to any nonmonetary default (or substantially similar nonmonetary default), be obligated to provide such written notice more than two times during the Term, the third such default not requiring such notice by Landlord;

(b) Tenant shall fail to pay to Landlord any rent or any other monetary charge due from Tenant hereunder as and when due and payable;

(c) The interest of Tenant under this Lease shall be levied on under execution, turnover or other legal process;

(d) Any petition in bankruptcy or other insolvency proceedings shall be filed by or against Tenant, or any petition shall be filed or other action taken to declare Tenant a bankrupt or to delay, reduce or modify Tenant's debts or obligations or to reorganize or modify Tenant's capital structure or indebtedness or to appoint a trustee, receiver or liquidator of Tenant or of any property of Tenant, or any proceeding or other action shall be commenced or taken by any governmental authority for the dissolution or liquidation of Tenant;

(e) Tenant shall become insolvent, or Tenant shall make an assignment for the benefit of creditors, or Tenant shall make a transfer in fraud of creditors, or a receiver or trustee shall be appointed for Tenant or any of its properties;

(f) The admission by Tenant that it cannot meet its obligations as they become due;

(g) Tenant shall desert, abandon or vacate the Premises or any substantial portion thereof;

(h) Tenant shall fail to operate its business in the Premises for more than fifteen (15) days for any reason other than destruction or condemnation of the Premises; or

(i) The death or legal incapacity of Tenant, if Tenant is an individual person, or the termination, dissolution or liquidation of Tenant, if Tenant is a corporation, partnership or other entity. The term "*Tenant*" as used in this *Section 15.1* shall be deemed to include any guarantor of, or any other person or entity primarily or secondarily liable for, any of the Tenant's obligations under this Lease.

**Section 15.2.** *Landlord's Remedies* Upon the occurrence of any default by Tenant under this Lease, Landlord may, at its sole option, have the option to pursue any one or more of the following remedies without any notice or demand whatsoever, other than any notice expressly provided in this Lease (and without limiting the generality of the foregoing, Tenant hereby specifically waives notice and demand for payment of rent or other obligations due hereunder and waives any and all other notice or demand requirements imposed by applicable law):

(a) Terminate this Lease, and Landlord may forthwith repossess the Premises, in any lawful manner and without breach of the Peace, and be entitled to recover as damages a sum of money equal to the total of (i) the cost of recovering the Premises, (ii) the cost of removing and storing Tenant's or any other occupant's property, (iii) the unpaid rent and any other sums accrued hereunder at the date of termination, (iv) a sum equal to the amount, if any, by which the present value of the total rent and other benefits which would have accrued to Landlord under this Lease for the remainder of the Term if the terms of this Lease had been fully complied with by Tenant, exceeds the total fair market value of the Premises for the balance of the Term (it being the

agreement of the parties hereto that Landlord shall receive the benefit of its bargain), (v) the cost of restoring the Premises to the condition necessary to rent the Premises at the prevailing market rental rate, normal wear and tear excepted, (vi) any increase in insurance premiums caused by the vacancy of the Premises and (vii) any other sum of money or damages owed by Tenant to Landlord. The fair market value of the Premises shall be the prevailing market rental rate for similar space of similar size in a similar building in the city where the Premises is located for a lease term equal to the remaining Term (without regard to any renewal option). In the event Landlord shall elect to terminate this Lease, Landlord shall at once have all the rights of reentry upon the Premises, without becoming liable for damages, or guilty of trespass.

(b) Terminate Tenant's right of occupancy of the Premises and reenter and repossess the Premises, without breach of the peace and in any lawful manner by entry, forcible entry or detainer suit or otherwise, without demand or notice of any kind to Tenant and without terminating this Lease, without acceptance of surrender of possession of the Premises, and without becoming liable for damages or guilty of trespass, in which event Landlord may, but shall be under no obligation to relet the Premises or any part thereof for the account of Tenant (nor shall Landlord be under any obligation to relet the Premises before Landlord relets or leases any other property under the ownership or control of Landlord) for a period equal to or lesser or greater than the remainder of the Term of this Lease on whatever terms and conditions Landlord, at Landlord's sole discretion, deems advisable. Tenant shall be liable for and shall pay to Landlord all rent payable by Tenant under this Lease (plus interest at the rate (the "*Past Due Rate*") of eighteen percent (18%) per annum not to exceed the highest lawful rate allowed by applicable law if in arrears) plus an amount equal to (i) the cost of recovering possession of the Premises, (ii) the cost of removing and storing any of Tenant's or any other occupant's property left on the Premises after reentry, (iii) the cost of decorations, repairs, changes, alterations and additions to the Premises, (iv) the cost of any attempted reletting or reletting and the collection of the rent accruing from such reletting, (v) the cost of any brokerage fees or commissions payable by Landlord in connection with any reletting or attempted reletting, (vi) any other costs incurred by Landlord in connection with any such reletting or attempted reletting, (vii) the cost of any increase in insurance premiums caused by the termination of possession of the Premises and (viii) any other sum of money or damages owed by Tenant to Landlord, all reduced by any sums received by Landlord through reletting the Premises; *provided, however*, that in no event shall Tenant be entitled to any excess of any sums obtained by reletting over and above rent provided in this Lease to be paid by Tenant to Landlord. For the purpose of such reletting Landlord is authorized to decorate or to make any repairs, changes, alterations or additions in or to the Premises that may be necessary. Landlord may file suit to recover any sums falling due under the terms of this *Section 15.2(b)* from time to time, and no delivery to or recovery by Landlord of any portion due Landlord hereunder shall be any defense in any action to recover any amount not theretofore reduced to judgment in favor of Landlord. No reletting shall be construed as an election on the part of Landlord to terminate this Lease unless a written notice of such intention is given to Tenant by Landlord. Notwithstanding any such reletting without termination, Landlord may at any time thereafter elect to terminate this Lease for such previous default and/or exercise its rights under *Section 15.2(a)* of this Lease.

(c) Do whatever Tenant is obligated to do under the terms on this Lease and, if necessary enter upon the Premises to perform such act; and Tenant agrees to reimburse Landlord on demand for any expenses which Landlord may incur in effecting compliance with Tenant's obligations under this Lease plus fifteen percent (15%) of such cost to cover overhead plus interest at the Past Due Rate, and Tenant further agrees that Landlord shall not be liable for any damages resulting to Tenant from such action. No action taken by Landlord under this *Section 15.2(c)* shall relieve Tenant from any of its obligations under this Lease or from any consequences or liabilities arising from the failure to perform such obligations.

(d) Without waiving such default, apply all or any part of the Security Deposit to cure the default or to any damages suffered as a result of the default to the extent of the amount of damages suffered. Tenant shall reimburse Landlord for the amount of such depletion of the Security Deposit on demand.

(e) Disconnect, discontinue, interrupt or cause the interruption of any utility or service currently being furnished to Tenant including, without limitation, gas, water, electricity, air conditioning and heating.

(f) Change all door locks and other security devices of Tenant at the Premises, and Tenant hereby expressly agrees that Landlord shall not be required to affix any notice of any kind to the Premises or provide the new key

Commercial Lease – Page 6                    Initialed: Landlord *KK*   Tenant *SRD*

to the Tenant at any hour, including Tenant's regular business hours, until such time as Tenant has cured any and all defaults hereunder and reimbursed Landlord for all sums due Landlord hereunder. Landlord, on terms and conditions satisfactory to Landlord in its sole discretion, may upon request from Tenant's employees, enter the Premises for the purpose of retrieving therefrom personal property of such employees, provided, Landlord shall have no obligation to do so.

(g) Exercise any of the following remedies: enforcement of Landlord's statutory lien, enforcement of Landlord's contractual lien provided in this Lease, suit on the contract, suit for anticipatory breach and injunctive relief of all varieties.

(h) Exercise any or all other remedies available to Landlord in this Lease, at law or in equity.

**Section 15.3.** *No Duty to Relet or Mitigate.* Notwithstanding anything contained herein to the contrary, to the full extent permitted under applicable law, Tenant hereby releases Landlord from any and all duty to relet the Premises or otherwise mitigate damages. Landlord shall not be liable, nor shall Tenant's obligations hereunder be diminished, because of Landlord's failure to relet the Premises or collect rent due with respect to such reletting. In no event shall Tenant be entitled to any excess rents received by Landlord. In the event, and only in the event, that (despite such waiver) Texas law requires Landlord to attempt to mitigate damages, Landlord shall use reasonable efforts to relet the Premises on such terms and conditions as Landlord in its good faith judgment may determine (including without limitation a term different than the Term, rental concessions, alterations and repair of the Premises); *provided, however,* that Landlord shall not be obligated to relet the Premises before leasing any other property under the ownership or control of Landlord.

**Section 15.4.** *Reentry.* If Tenant fails to allow Landlord to reenter and repossess the Premises, Landlord shall have full and free license to enter into and upon the Premises, without breach of the peace and in any legal manner, with or without process of law for the purpose of repossessing the Premises, expelling or removing Tenant and any others who may be occupying or within the Premises, removing any and all property therefrom and changing all door locks of the Premises. Landlord may take these actions without being deemed in any manner guilty of trespass, eviction or forcible entry or detainer, without accepting surrender of possession of the Premises by Tenant, and without incurring any liability for any damage resulting therefrom including without limitation any liability arising under Sections 93.002 and 93.003 of the Texas Property Code, as amended or superseded from time to time, and without relinquishing Landlord's right to rent or any other right given to Landlord hereunder or by operation of law or in equity; Tenant hereby waiving any right to claim damage for such reentry and expulsion including without limitation any rights granted to Tenant by Sections 93.002 and 93.003 of the Texas Property Code, as amended or superseded from time to time.

**Section 15.5.** *Rights of Landlord in Bankruptcy.* Nothing contained in this Lease shall limit or prejudice the right of Landlord to prove for and obtain in proceedings for bankruptcy or insolvency, by reason of the expiration or termination of this Lease or the termination of Tenant's right of occupancy, an amount equal to the maximum allowed by any statute or rule of law in effect at the time when, and governing the proceedings in which, the damages are to be proved, whether or not the amount be greater, equal to, or less than the amount of the loss or damages referred to in this *Section 15.5.* In the event that under applicable law the trustee in bankruptcy or Tenant has the right to affirm this Lease and continue to perform the obligations of Tenant hereunder, such trustee or Tenant shall, in such time period as may be permitted by the bankruptcy court having jurisdiction, cure all defaults of Tenant hereunder outstanding as of the date of the affirmance of this Lease and provide to Landlord such adequate assurances as may be necessary to ensure Landlord of the continued performance of Tenant's obligations under this Lease.

**Section 15.6.** *Waiver of Certain Rights.* Tenant hereby expressly waives any and all rights Tenant may have under

Sections 93.002 and 93.003 of the Texas Property Code (as amended or superseded from time to time) including without limitation its right to (a) either recover possession of the Premises or terminate this Lease, and (b) recover from Landlord an amount equal to the sum of its actual damages, one month's rent, and reasonable attorney's fees, less any delinquent rents or other sums for which Tenant is liable. Tenant hereby waives any and all liens (whether statutory, contractual or constitutional) it may have or acquire as a result of a breach by Landlord under this Lease.

Tenant also waives and releases any statutory lien and offset rights it may have against Landlord, including without limitation the rights conferred upon Tenant pursuant to Section 91.004 of the Texas Property Code, as amended or superseded from time to time, or other applicable law.

**Section 15.7.** *Non-Waiver.* Failure on the part of Landlord to complain of any action or nonaction on the part of Tenant, no matter how long the same may continue, shall not be deemed to be a waiver by Landlord of any of its rights under this Lease. Further, it is covenanted and agreed that no waiver at any time of any of the provisions hereof by Landlord shall be construed as a waiver of any of the other provisions hereof and that a waiver at any time of any of the provisions hereof shall not be construed as a waiver at any subsequent time of the same provisions. The consent or approval by Landlord to or of any action by Tenant requiring Landlord's consent or approval shall not be deemed to waive or render unnecessary Landlord's consent or approval to or of any subsequent similar act by Tenant.

**Section 15.8.** *Holding Over.* In the event Tenant remains in possession of the Premises after the expiration or termination of this Lease without the execution of a new lease, then Tenant, at Landlord's option, shall be deemed to be occupying the Premises as a tenant at will at a base rental equal to one hundred fifty percent (150%) of the rent then in effect and shall otherwise remain subject to all the conditions, provisions and obligations of this Lease insofar as the same are applicable to a tenancy at will. No holding over by Tenant after the expiration or termination of this Lease shall be construed to extend the term or in any other manner be construed as permission by Landlord to hold over. Tenant shall indemnify Landlord (y) against all claims for damages by any other tenant to whom Landlord may have leased all or any part of the Premises effective upon the termination or expiration of this Lease, and (z) for all other losses, costs and expenses, including reasonable attorney's fees, incurred by reason of such holding over.

**Section 15.9.** *Attorney's Fees and Other Expenses.* In the event the Tenant defaults in the faithful performance or observance of any of the terms, covenants, provisions, agreements or conditions contained in this Lease, the Tenant shall be liable for and shall pay to the Landlord all expenses incurred by such party in enforcing any of its remedies for any such default, and if the Landlord places the enforcement of all or any part of this Lease in the hands of an attorney, the Tenant agrees to pay the Landlord's reasonable attorney's fees in such connection.

**Section 16.** *Eminent Domain.* If all or any part of the Premises shall be taken by condemnation or under threat of condemnation, either Landlord or Tenant, at its option, may terminate this Lease. If Landlord or Tenant does not so terminate this Lease, then this Lease shall continue in full force and effect as to the remainder of the Premises not taken. Landlord shall be entitled to any and all condemnation proceeds for the taking of the Premises.

**Section 17.** *Landlord's Entry.* Landlord may enter in and upon the Premises from time to time to inspect same, to show same to prospective purchasers or tenants and for any other purposes, provided that such entry (except in the case of emergency) shall be made only during reasonable business hours and in a manner so as not to unreasonably interfere with Tenant's use of the Premises. Tenant shall not change any locks, add security equipment or otherwise limit Landlord's access to the entire Premises without the express written consent of the Landlord.

Initialed: Landlord _KK_    Tenant _SRD_

**Section 18.** *Notices.* All notices required or permitted hereunder shall be in writing and may be given or served by depositing such notice with the United States postal service, certified mail with return receipt requested, postage prepaid, or by delivering same in person, addressed as follows:

| | |
|---|---|
| To Landlord: | Kor Realty, Inc. |
| | 990 Hwy 287 N. Ste 106 #330 |
| | Mansfield, Texas 76063 |
| | |
| To Tenant: | Korwall Industries Inc. |
| | 326 N. Bowen Rd. |
| | Arlington, TX 76012 |

Notices so mailed shall be effective the date deposited with the United States postal service as required above. Notices given in any other manner shall be effective only if and when actually delivered at the mailing address of the Landlord. Rent payments shall be mailed to the Landlords address noted above in section 18.

**Section 19.** *Successors and Assigns.* Subject to the provisions of *Section 14* hereof, the provisions hereof shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors, and assigns.

**Section 20.** *Subordination, Attornment, Estoppels.* This Lease and Tenant's rights to the Premises are subject and subordinate to any mortgage, deed of trust, or other lien, or other matters of record presently existing or hereafter placed upon the Premises. Upon foreclosure by the trustee or beneficiary under any such mortgage or deed of trust, Tenant will automatically become the tenant of any party succeeding to the interest of Landlord hereunder. Upon request by Landlord or any trustee or beneficiary under any such mortgage or deed of trust, Tenant shall execute such agreements, including estoppel agreements and attornment agreements, as Landlord or such trustee or beneficiary may reasonably request.

Section 21. *Multi-Tenant Building.* If Tenant does not occupy 100% of the building covered by this Lease, Landlord will allocate any taxes, costs and expenses to be paid by Tenant under this Lease based on the proportionate relationship of the Premises to the entire building as determined by Landlord taking into account square footage, usage and other matters deemed to be relevant by Landlord.

**Section 22.** *Landlord's Liability.* **Any provisions of this Lease to the contrary notwithstanding, Tenant hereby agrees that no personal, partnership or corporate liability of any kind or character whatsoever now attaches or at any time hereafter under any condition shall attach to Landlord, its agents and representatives for payment of any amounts payable under this Lease or for the performance of any obligation under this Lease. The exclusive remedies of Tenant for the failure of Landlord to perform any of its obligations under this Lease shall be to proceed against the interest of Landlord in and to the Premises.**

**Section 23.** *Entire Agreement and Modification.* This Lease constitutes the entire agreement between Landlord and Tenant and may be modified or amended only by a written document duly executed by both Landlord and Tenant.

**Section 24.** *Governing Law and Severability.* This Lease shall be governed by and construed in accordance with the laws of the State of Texas. All legal actions to improve or continue this Lease shall be instituted in the courts of Tarrant County, Texas. If any provision hereof is invalid or unenforceable, then the remainder of this Lease shall not be affected thereby and shall remain in full force and effect.

**Section 25.** *Quiet Enjoyment.* Landlord covenants and warrants that while Tenant is not in default hereunder, Tenant shall and may peaceably and quietly enjoy, have, hold, occupy and use the Premises and Landlord agrees to warrant and forever defend title to the Premises against the claims of any and all persons whomsoever lawfully claiming or to claim all or any part of the Premises by, through, or under Landlord, but not otherwise; subject to the provisions of this Lease and the matters herein referred to.

Initialed: Landlord *KK*  Tenant *SRD*

**Section 25.** *Addenda and Exhibits.* The following addenda and/or exhibits are attached hereto and incorporated as part of this Lease for all purposes: _____.

**LANDLORD HAS MADE NO WARRANTIES TO TENANT AS TO THE USE OR CONDITION OF THE PREMISES, EITHER EXPRESS OR IMPLIED, AND LANDLORD AND TENANT EXPRESSLY DISCLAIM ANY IMPLIED WARRANTY THAT THE PREMISES ARE SUITABLE FOR TENANT'S INTENDED COMMERCIAL PURPOSE OR ANY OTHER WARRANTY (EXPRESS OR IMPLIED) REGARDING THE PREMISES. TENANT EXPRESSLY WAIVES (TO THE EXTENT NOT PROHIBITED BY APPLICABLE LAW) ANY CLAIMS UNDER FEDERAL, STATE OR OTHER LAW THAT TENANT MIGHT OTHERWISE HAVE AGAINST LANDLORD RELATING TO THE USE, CHARACTERISTICS OR CONDITION OF THE PREMISES. LANDLORD AND TENANT EXPRESSLY AGREE THAT THERE ARE NO, AND SHALL NOT BE ANY, IMPLIED WARRANTIES OF MERCHANTABILITY, HABITABILITY, FITNESS FOR A PARTICULAR PURPOSE OR ANY OTHER KIND ARISING OUT OF THIS LEASE AND THAT ALL EXPRESS OR IMPLIED WARRANTIES IN CONNECTION HEREWITH ARE EXPRESSLY DISCLAIMED AND WAIVED.**

WITNESS, THE EXECUTION HEREOF, as of the date first set forth hereinabove.

LANDLORD:
By: _____
Karmon Korleski

TENANT:
By: _____
Stan Dimmick

# EXHIBIT 6

CASE #JP02-22-E00135343
IN THE JUSTICE COURT
PRECINCT TWO
TARRANT COUNTY, TEXAS

KOR REALTY INC

VS

KORWALL INDUSTRIES INC
AND ALL OCCUPANTS

J U D G M E N T

ON 8TH DAY OF JUNE, 2022, CAME TO BE HEARD THE ABOVE NUMBERED AND ENTITLED CAUSE, AND THE PLAINTIFF BY AGENT AND ANNOUNCED READY FOR TRIAL, AND THE DEFENDANT, AFTER BEING DULY CITED TO APPEAR AND PROPERLY NOTIFIED OF THE TRIAL DID NOT APPEAR BUT WHOLLY MADE DEFAULT, AND IT APPEARING TO THE COURT UPON GOOD AND SUFFICIENT EVIDENCE THAT PLAINTIFF IS ENTITLED TO RECOVER JUDGMENT.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED BY THE COURT THAT PLAINTIFF(S), KOR REALTY INC, DO HAVE AND RECOVER OF THE DEFENDANT(S), KORWALL INDUSTRIES INC AND ALL OCCUPANTS, POSSESSION OF THE FOLLOWING DESCRIBED PREMISES SITUATED IN JUSTICE PRECINCT TWO, TARRANT COUNTY, TEXAS, TO WIT: 328 N BOWEN RD ARLINGTON, TX   76012 PLUS $7,115.00 DELINQUENT RENT, AND ALL COSTS OF THIS SUIT TOGETHER WITH INTEREST THEREON AT THE RATE OF 5.0000% COMPOUNDED ANNUALLY FROM THE DATE OF THIS JUDGMENT.

IT IS FURTHER ORDERED THAT A WRIT OF POSSESSION ISSUE TO THE PROPER OFFICER COMMANDING HIM TO SEIZE POSSESSION OF THE SAID ABOVE DESCRIBED PREMISES AND DELIVER SAME TO SAID PLAINTIFF IF DEFENDANT FAILS TO VACATE AND FURTHER THAT EXECUTION ISSUE FOR COLLECTION OF ALL MONIES DUE TO THE PLAINTIFF(S).

IT IS FURTHER ORDERED THAT DURING THE PENDENCY OF ANY APPEAL THE DEFENDANT(S) SHALL PAY RENT FOR EACH RENTAL PERIOD INTO THE COURT REGISTRY IN THE AMOUNT OF $2,650.00. THE APPEAL BOND AMOUNT IS $14,488.00.

IF YOU ARE AN INDIVIDUAL (NOT A COMPANY), YOUR MONEY OR PROPERTY MAY BE PROTECTED FROM BEING TAKEN TO PAY THIS JUDGMENT. FIND OUT MORE BY VISITING WWW.TEXASLAWHELP.ORG/EXEMPT-PROPERTY. / SI USTED ES UNA PERSONA FÍSICA (Y NO UNA COMPAÑÍA), SU DINERO O PROPIEDAD PUDIERAN ESTAR PROTEGIDOS DE SER EMBARGADOS COMO PAGO DE ESTA DEUDA DECRETADA EN JUICIO EN CONTRA SUYA. OBTENGA MAYOR INFORMACIÓN VISITANDO EL SITIO WWW.TEXASLAWHELP.ORG/EXEMPT-PROPERTY.

SIGNED THIS 8TH DAY OF JUNE, 2022.

Mary Jon Cravens Cumutt
JUSTICE OF THE PEACE
PRECINCT TWO
TARRANT COUNTY, TEXAS

# EXHIBIT 7

CASE #JP02-22-E00135344
IN THE JUSTICE COURT
PRECINCT TWO
TARRANT COUNTY, TEXAS

KOR REALTY INC

VS

KORWALL INDUSTRIES INC
AND ALL OCCUPANTS

J U D G M E N T

ON 8TH DAY OF JUNE, 2022, CAME TO BE HEARD THE ABOVE NUMBERED AND ENTITLED
CAUSE, AND THE PLAINTIFF BY AGENT AND ANNOUNCED READY FOR TRIAL, AND THE
DEFENDANT, AFTER BEING DULY CITED TO APPEAR AND PROPERLY NOTIFIED OF THE TRIAL
DID NOT APPEAR BUT WHOLLY MADE DEFAULT, AND IT APPEARING TO THE COURT UPON GOOD
AND SUFFICIENT EVIDENCE THAT PLAINTIFF IS ENTITLED TO RECOVER JUDGMENT.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED BY THE COURT THAT
PLAINTIFF(S), KOR REALTY INC, DO HAVE AND RECOVER OF THE DEFENDANT(S), KORWALL
INDUSTRIES INC AND ALL OCCUPANTS, POSSESSION OF THE FOLLOWING DESCRIBED PREMISES
SITUATED IN JUSTICE PRECINCT TWO, TARRANT COUNTY, TEXAS, TO WIT: 326 N BOWEN RD
ARLINGTON, TX  76012 PLUS $2,357.57 DELINQUENT RENT, AND ALL COSTS OF THIS SUIT
TOGETHER WITH INTEREST THEREON AT THE RATE OF 5.0000% COMPOUNDED ANNUALLY FROM
THE DATE OF THIS JUDGMENT.

IT IS FURTHER ORDERED THAT A WRIT OF POSSESSION ISSUE TO THE PROPER OFFICER
COMMANDING HIM TO SEIZE POSSESSION OF THE SAID ABOVE DESCRIBED PREMISES AND
DELIVER SAME TO SAID PLAINTIFF IF DEFENDANT FAILS TO VACATE AND FURTHER THAT
EXECUTION ISSUE FOR COLLECTION OF ALL MONIES DUE TO THE PLAINTIFF(S).

IT IS FURTHER ORDERED THAT DURING THE PENDENCY OF ANY APPEAL THE
DEFENDANT(S) SHALL PAY RENT FOR EACH RENTAL PERIOD INTO THE COURT REGISTRY IN THE
AMOUNT OF $2,650.00. THE APPEAL BOND AMOUNT IS $4,973.00.

IF YOU ARE AN INDIVIDUAL (NOT A COMPANY), YOUR MONEY OR PROPERTY MAY BE
PROTECTED FROM BEING TAKEN TO PAY THIS JUDGMENT. FIND OUT MORE BY VISITING
WWW.TEXASLAWHELP.ORG/EXEMPT-PROPERTY. / SI USTED ES UNA PERSONA FÍSICA (Y NO UNA
COMPAÑÍA), SU DINERO O PROPIEDAD PUDIERAN ESTAR PROTEGIDOS DE SER EMBARGADOS COMO
PAGO DE ESTA DEUDA DECRETADA EN JUICIO EN CONTRA SUYA. OBTENGA MAYOR INFORMACIÓN
VISITANDO EL SITIO WWW.TEXASLAWHELP.ORG/EXEMPT-PROPERTY.

SIGNED THIS 8TH DAY OF JUNE, 2022.

*Mary Jon Cravens Curnutt*
_____
JUSTICE OF THE PEACE
PRECINCT TWO
TARRANT COUNTY, TEXAS

**<u>EXHIBIT 8</u>**

CASE NO. **JP02-22-E00135344**        JUSTICE COURT PRECINCT TWO       TARRANT COUNTY, TEXAS

KOR REALTY INC
        VS
KORWALL INDUSTRIES INC AND ALL OCCUPANTS

WRIT OF POSSESSION

TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS – GREETINGS:

ON THE, JUNE 08, 2022 IN THE ABOVE CASE, JUDGMENT WAS GRANTED AGAINST DEFENDANT(S) (REFERRED TO AS THE TENANT) ENTITLING PLAINTIFF (REFERRED TO AS THE LANDLORD) TO POSSESSION OF THE PREMISES DESCRIBED BELOW:

326 N BOWEN RD
ARLINGTON, TX  76012

YOU ARE THEREFORE COMMANDED TO:

1. POST A WRITTEN WARNING OF AT LEAST 8-1/2 BY 11 INCHES ON EXTERIOR OF THE FRONT DOOR OF THE RENTAL UNIT NOTIFYING THE TENANT THAT THE WRIT HAS BEEN ISSUED AND THAT THE WRIT WILL BE EXECUTED ON OR AFTER A SPECIFIC DATE AND TIME STATED IN THE WARNING NOT SOONER THAN 24 HOURS AFTER THE WARNING IS POSTED; AND
2. WHEN THE WRIT IS EXECUTED:
    A) DELIVER POSSESSION OF THE PREMISES TO THE LANDLORD;
    B) INSTRUCT THE TENANT AND ALL PERSONS CLAIMING UNDER THE TENANT TO LEAVE THE PREMISES IMMEDIATELY, AND IF THE PERSONS FAIL TO COMPLY, PHYSICALLY REMOVE THEM;
    C) INSTRUCT THE TENANT TO MOVE OR TO ALLOW THE LANDLORD, THE LANDLORD'S REPRESENTATIVES, OR OTHER PERSONS ACTING UNDER THE OFFICER'S SUPERVISION TO REMOVE ALL PERSONAL PROPERTY FROM THE RENTAL UNIT OTHER THAN PERSONAL PROPERTY CLAIMED TO BE OWNED BY THE LANDLORD; AND
    D) PLACE, OR HAVE AN AUTHORIZED PERSON PLACE, THE REMOVED PERSONAL PROPERTY OUTSIDE THE RENTAL UNIT AT A NEARBY LOCATION, BUT NOT BLOCKING A PUBLIC SIDEWALK, PASSAGEWAY, OR STREET AND NOT WHILE IT IS RAINING, SLEETING, OR SNOWING.

YOU ARE HEREBY AUTHORIZED AT YOUR DISCRETION TO:

    E) ENGAGE THE SERVICES OF A BONDED OR INSURED WAREHOUSEMAN TO REMOVE AND STORE, SUBJECT TO APPLICABLE LAW, PART OR ALL OF THE PROPERTY AT NO COST TO THE LANDLORD OR THE OFFICER EXECUTING THIS WRIT.
    F) YOU MAY NOT REQUIRE THE LANDLORD TO STORE THE PROPERTY.

YOU ARE HEREBY NOTIFIED THAT:

    G) PURSUANT TO SECTION 7.003, CIVIL PRACTICE AND REMEDIES CODE, YOU ARE NOT LIABLE FOR DAMAGES RESULTING FROM THE EXECUTION OF THE WRIT IF YOU EXECUTE THE WRIT IN GOOD FAITH AND WITH REASONABLE DILIGENCE.
    H) YOU MAY USE REASONABLE FORCE IN EXECUTING THIS WRIT.

HEREIN FAIL NOT TO MAKE DUE RETURN OF THIS WRIT, AND CERTIFY HOW YOU HAVE EXECUTED SAME.

GIVEN UNDER MY HAND ON THIS THE 17TH DAY OF JUNE, 2022.

JUSTICE OF THE PEACE PRECINCT TWO
TARRANT COUNTY, TEXAS

## **<u>EXHIBIT 9</u>**

## CONSTABLE'S RETURN

CAME TO HAND THE _17th_ DAY OF _June_ A.D. _2022_, AT _3:08_

O'CLOCK _P_ .M., POSTED ON THE _18th_ DAY OF _June_ , 20_22_ AND EXECUTED THE _27th_

DAY OF _June_ , 20_22_ , AT _9:30_ O'CLOCK _A_ .M.

_Defendant Not present_
_Small amount of files/office furniture removed_
_by plaintiff. Locks changed by plaintiff_

FEE:
EXECUTING WRIT..........$ _150.00_

MILEAGE _____ MILES.._____

TOTAL ...............$ _150.00_

Constable Robert J. McGinty
Tarrant County, Pct. 2
CONSTABLE PRECINCT TWO
TARRANT COUNTY, TEXAS

BY _C.C. Watson_
DEPUTY

C.C. WATSON

********************************************************************

## WRIT OF POSSESSION

IN THE JUSTICE COURT
JUDGE MARY TOM CURNUTT
JUSTICE OF THE PEACE, PRECINCT TWO
700 EAST ABRAM STREET, SUITE 200
ARLINGTON TEXAS 76010

ISSUED: JUNE 17, 2022

PHONE -   817-548-3925
FAX    -   682-255-3960

CASE NO. JP02-22-E00135344

PLAINTIFF(S):
KOR REALTY INC

990 HWY 287 N STE 106 #330
MANSFIELD, TX 76063

ATTORNEY(S) FOR PLAINTIFF(S):

VS.

DEFENDANT(S):
KORWALL INDUSTRIES INC

326 N BOWEN RD
ARLINGTON, TX 76012

AND ALL OCCUPANTS
ATTORNEY(S) FOR DEFENDANT(S):

********************************************************************

C02            CASE NO: JP02-22-E00135344

# EXHIBIT :

CASE NO. **JP02-22-E00135343**    JUSTICE COURT PRECINCT TWO    TARRANT COUNTY, TEXAS

KOR REALTY INC
   VS
KORWALL INDUSTRIES INC AND ALL OCCUPANTS

### WRIT OF POSSESSION

TO ANY SHERIFF OR CONSTABLE OF THE STATE OF TEXAS – GREETINGS:

ON THE, JUNE 08, 2022 IN THE ABOVE CASE, JUDGMENT WAS GRANTED AGAINST DEFENDANT(S) (REFERRED TO AS THE TENANT) ENTITLING PLAINTIFF (REFERRED TO AS THE LANDLORD) TO POSSESSION OF THE PREMISES DESCRIBED BELOW:

328 N BOWEN RD
ARLINGTON, TX 76012

YOU ARE THEREFORE COMMANDED TO:

1.  POST A WRITTEN WARNING OF AT LEAST 8-1/2 BY 11 INCHES ON EXTERIOR OF THE FRONT DOOR OF THE RENTAL UNIT NOTIFYING THE TENANT THAT THE WRIT HAS BEEN ISSUED AND THAT THE WRIT WILL BE EXECUTED ON OR AFTER A SPECIFIC DATE AND TIME STATED IN THE WARNING NOT SOONER THAN 24 HOURS AFTER THE WARNING IS POSTED; AND
2.  WHEN THE WRIT IS EXECUTED:
    A)  DELIVER POSSESSION OF THE PREMISES TO THE LANDLORD;
    B)  INSTRUCT THE TENANT AND ALL PERSONS CLAIMING UNDER THE TENANT TO LEAVE THE PREMISES IMMEDIATELY, AND IF THE PERSONS FAIL TO COMPLY, PHYSICALLY REMOVE THEM;
    C)  INSTRUCT THE TENANT TO MOVE OR TO ALLOW THE LANDLORD, THE LANDLORD'S REPRESENTATIVES, OR OTHER PERSONS ACTING UNDER THE OFFICER'S SUPERVISION TO REMOVE ALL PERSONAL PROPERTY FROM THE RENTAL UNIT OTHER THAN PERSONAL PROPERTY CLAIMED TO BE OWNED BY THE LANDLORD; AND
    D)  PLACE, OR HAVE AN AUTHORIZED PERSON PLACE, THE REMOVED PERSONAL PROPERTY OUTSIDE THE RENTAL UNIT AT A NEARBY LOCATION, BUT NOT BLOCKING A PUBLIC SIDEWALK, PASSAGEWAY, OR STREET AND NOT WHILE IT IS RAINING, SLEETING, OR SNOWING.
    E)  IN THE ALTERNATIVE, THE LANDLORD MAY OPEN THE DOOR TO THE PREMISES AND ALLOW IT TO REMAIN OPEN FOR 24 HOURS TO ALLOW THE TENANT TO VISIT THE PREMISES AND REMOVE ALL OF HIS/HER PROPERTY.

YOU ARE HEREBY AUTHORIZED AT YOUR DISCRETION TO:

    F)  ENGAGE THE SERVICES OF A BONDED OR INSURED WAREHOUSEMAN TO REMOVE AND STORE, SUBJECT TO APPLICABLE LAW, PART OR ALL OF THE PROPERTY AT NO COST TO THE LANDLORD OR THE OFFICER EXECUTING THIS WRIT.
    G)  YOU MAY NOT REQUIRE THE LANDLORD TO STORE THE PROPERTY.

YOU ARE HEREBY NOTIFIED THAT:

    H)  PURSUANT TO SECTION 7.003, CIVIL PRACTICE AND REMEDIES CODE, YOU ARE NOT LIABLE FOR DAMAGES RESULTING FROM THE EXECUTION OF THE WRIT IF YOU EXECUTE THE WRIT IN GOOD FAITH AND WITH REASONABLE DILIGENCE.
    I)  YOU MAY USE REASONABLE FORCE IN EXECUTING THIS WRIT.

HEREIN FAIL NOT TO MAKE DUE RETURN OF THIS WRIT, AND CERTIFY HOW YOU HAVE EXECUTED SAME.

GIVEN UNDER MY HAND ON THIS THE 13TH DAY OF JULY, 2022.

JUSTICE OF THE PEACE PRECINCT TWO
TARRANT COUNTY, TEXAS

KD

## EXHIBIT ;

## CONSTABLE'S RETURN

CAME TO HAND THE _14th_ DAY OF _July_ A.D. _2022_, AT _12:58_

O'CLOCK _P_ .M., POSTED ON THE _15th_ DAY OF _July_, 20_22_ AND EXECUTED THE _16th_

DAY OF _July_, 20_22_, AT _8:45_ O'CLOCK _A_.M.

_Defendant not present._
_Writ executed using special instructions_
_in (2 E) of writ._

Constable Robert J. McGinty
Tarrant County, Pct. 2

FEE:
EXECUTING WRIT..........$ _150.00_     CONSTABLE PRECINCT TWO
                                        TARRANT COUNTY, TEXAS

MILEAGE _____ MILES..

    TOTAL ..............$ _150.00_      BY _____ DEPUTY

                                        C.C. WATSON

## WRIT OF POSSESSION

IN THE JUSTICE COURT                 ISSUED: JULY 13, 2022
JUDGE MARY TOM CURNUTT
JUSTICE OF THE PEACE, PRECINCT TWO
700 EAST ABRAM STREET, SUITE 200     PHONE -  817-548-3925
ARLINGTON TEXAS  76010               FAX   -  682-255-3960

CASE NO. JP02-22-E00135343

PLAINTIFF(S):
KOR REALTY INC                       990 HWY 287 N STE 106 #330    HOME: 817-455-2361
                                     MANSFIELD, TX  76063

ATTORNEY(S) FOR PLAINTIFF(S):

                                     VS.

DEFENDANT(S):
KORWALL INDUSTRIES INC               328 N BOWEN RD                HOME: 817-688-5381,
                                     ARLINGTON, TX  76012          WORK: 817-688-2715

AND ALL OCCUPANTS
ATTORNEY(S) FOR DEFENDANT(S):

C02            CASE NO: JP02-22-E00135343

_Posted_
_7/15_
_8:45Am_

**<u>EXHIBIT <</u>**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Korwall Industries, Inc., | ) | Case No. 22-41574-elm7 |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

**AGREED ORDER DEEMING NON-RESIDENTIAL REAL PROPERTY
LEASE TERMINATED PRE-PETITION OR REJECTED AS OF JULY 15, 2022**

Came on for consideration the *Landlord's Unopposed Motion to Deem Non-Residential Real Property Lease Rejected as of July 15, 2022* (the "Motion")[1] [Docket No. ___] filed by Kor Realty, Inc. (the "Landlord"), a creditor and party-in-interest in the above-captioned Chapter 7 case. Having reviewed the Motion and having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein and that relief is proper given the circumstances of this case and agreed status of the Motion; and based on the evidence presented and the arguments presented in the Motion; the Court hereby finds that the Motion

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

-1-

should be granted.

IT IS THEREFORE ORDERED THAT:

1.       The Motion is **GRANTED** pursuant to section 365(a) of the Bankruptcy Code and

Bankruptcy Rule 6006.

2.       To the extent the Trustee, the Debtor, or the Debtor's estate has any interest in

the Lease, the Lease is hereby deemed fully rejected as of July 15, 2022.

3.       The Premises shall be deemed to be surrendered to the Landlord and the

Landlord is free to relet the Premises to any other party without further order from this Court.

4.       This Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

**### End of Order ###**